IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| AUSTIN M. BRAUN, | CV 17-70-BU-JCL |
| Plaintiff, | |
| vs. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Austin Braun brings this action 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security terminating his supplemental security income benefits as a result of a childhood disability redetermination. Effective in May 2011, Braun was granted childhood supplemental security income benefits due to a cognitive delay and attention deficit/hyperactivity disorders. (Doc. 6, at 113). As required by law, the Commissioner conducted a disability redetermination assessment after Braun reached age 18 by applying the criteria used in determining initial eligibility for adults. On August 5, 2014, the Commissioner issued a disability redetermination

1

decision, finding that Braun was no longer disabled as of January 31, 2014. (Doc. 6, at 137). Braun requested a hearing, and on April 13, 2016, an Administrative Law Judge ("ALJ") issued a decision finding that Braun's disability ended on January 31, 2014 and he had not become disabled again since that date. (Doc. 6, at 26). The Appeals Council denied Braun's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

I.  **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20

C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

At steps one and two, the ALJ found that since January 31, 3014, Braun has had the following severe impairments: attention-deficit hyperactive disorder ("ADHD"), speech and language delays, organic brain syndrome, and anxiety. At step three, the ALJ concluded that Braun did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Braun's

4

impairments could reasonably be expected to cause his alleged symptoms, his statements regarding the severity of those symptoms were not entirely consistent with the medical and other evidence of record. The ALJ determined that Braun had the residual functional capacity to perform at all exertional levels, subject to certain non-exertional limitations. The ALJ found that Braun did not have any past relevant work, but concluded at step five that he was not disabled because he could perform unskilled work as a window cleaner, garbage collector, or addresser. (Doc. 6, at 26-35).

Braun argues the ALJ's residual functional capacity assessment is not supported by substantial evidence and raises three main issues on appeal. First, he maintains the ALJ did not set forth clear and convincing reasons for discounting his subjective testimony. Second, Braun argues the ALJ failed to properly evaluate evidence provided by his vocational services program and treating nurse practitioner. Third, Braun contends the ALJ erred by finding that he did not meet or equal the criteria of any listed impairment. Finally, Braun argues the ALJ erred by relying on the vocational expert's testimony because it was based on an incomplete hypothetical.

### A. **Subjective Symptom Testimony**

Braun argues the ALJ did not provide sufficiently clear and convincing

reasons for discounting his subjective symptom testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Social Security Ruling 16-3p clarifies that subjective symptom evaluation is not an examination of an individual's character or "credibility."[1] SSR 16-3p at *1, 2017 WL 5180304 (October 25, 2017). Rather, the ALJ should consider whether the claimant's statements about the intensity, persistence and limiting effects of his or her symptoms are consistent with medical and other evidence in the record. SSR 16-3p *4-6, 2017 WL 5180304.

Here, the ALJ found that Braun met his initial burden because he produced

---

[1] SSR 16-3p is applicable to decisions issued on or after March 28, 2016. SSR 16-3p at *13 n. 27, 2017 WL 5180304. Because the ALJ issued her decision in this case on April 13, 2016, SSR 16-3p applies here.

evidence that he has medically determinable mental impairments that could reasonably be expected to cause his alleged symptoms. (Doc. 6, at 32). The ALJ then found that Braun's subjective "statements concerning the intensity, persistence and limiting effects of the these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 6, at 32).

Standing alone, the use of such boilerplate language is not helpful and may constitute reversible error. See *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). But as long as the ALJ still provides specific, clear and convincing reasons for discounting the claimant's testimony, the use of boilerplate language is not, by itself, grounds for reversal. See *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017).

It appears that in making this boilerplate statement, the ALJ was referring to the preceding paragraphs in which she explained her evaluation of Braun's subjective symptom testimony in more detail. First, the ALJ properly considered Braun's daily activities. For example, the ALJ noted that while Braun complains of disabling cognitive and emotional limitations, including a short temper and difficulty paying attention, he enrolled in culinary school after graduating from high school, went to parties, dated girls on line, and devoted a lot of time to online

music software and social media. (Doc. 6, at 31). The ALJ permissibly found that Braun's ability to engage in such a broad range of activities was not entirely consistent with his subjective symptom testimony. See *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Second, the ALJ found that Braun's allegations of disabling cognitive and emotional limitations were not entirely consistent with the baseline level of functioning reflected in the results of his many mental status examination. The ALJ recognized that Braun had a history of cognitive delay and ADHD, but noted his mental status examinations generally found him to be alert and oriented, calm and cooperative with a full range of affect, normal speech, clear and concrete thoughts, intact memory, appropriate judgment and insight, and no obvious signs of sadness or anxiety. (Doc. 6, at 31, 809, 881-915; 939-45).

Third, the ALJ found that Braun's reports of significant psychological limitations were not entirely consistent with the overall record, which indicated that his symptoms were reasonably controlled with counseling and medication. (Doc. 6, at 32). An ALJ may consider the effectiveness of medication and other treatment when evaluating a claimant's symptom testimony. See 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). The ALJ cited records from 2015 showing that Braun's regularly scheduled counseling sessions were helping him

manage his emotions and transition to independence. (Doc. 6, at 32, 946-56). Notes from those sessions reflect that Braun was looking for independent housing, had "gigs" around town working as a "music mixer," was active in hockey, was "doing great" and not experiencing any emotional distress, found a part time job at Staples, and was working on improving his relationship with his grandmother. (Doc. 6, at 946-56). The ALJ also cited records showing that Braun's prescribed medications were effective in stabilizing his mood and emotions, reducing impulsivity and hyperactivity, and improving his focus and productivity. (Doc. 6, at 32, 446-447, 579-80, 936-44). The ALJ permissibly discounted Braun's subjective symptom testimony in part because it was not consistent with these records, which show that his symptoms were reasonably well controlled and improved with medication and counseling.

The Court finds that these were sufficiently clear and convincing reasons for discounting Braun's subjective symptom testimony.

### B. Other Source Evidence

#### 1. Vocational Services

Braun next argues the ALJ erred by not giving more weight to evidence documenting his participation in a vocational services program, including records from his job coach, case manager, and supported living coach.

Vocational counselors, jobs coaches, and supported living coaches are not "acceptable medical sources" under the regulations, but they qualify as "other sources" 20 C.F.R. §§ 404.1513(a),(d); 416.913(a),(d); SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006). Information from "other sources" may "provide insight into the severity of the impairment and how it affects the individual's ability to function." SSR 06-3p. The ALJ may discount "other source" opinions by providing germane reasons, and need not cite the specific and legitimate reasons necessary to reject the contradicted opinion of an acceptable medical source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Commissioner of Soc. Sec*, 613 F.3d 1217, 1224 (9th Cir. 2010).

Since 2013, Braun has participated in a vocational services program and worked with a job coach, supported living coach, and case manager. (Doc. 6, at 371-94, 439-633). The program has provided Braun with counseling and other services, such as assistance with medications, shopping, household tasks, and interacting appropriately with others in the workplace and at home. Braun argues these records show that he struggles in all of these areas, has been fired from several jobs, and is unable to work unless he is accompanied by his job coach. Braun claims the ALJ should have given more weight to these records, and points to various notes reflecting that a job coach helped him after he started certain jobs,

including a part-time job at Staples, and that he has needed prompting to fill his medications and do his chores. (See e.g. Doc. 6, at 448, 454, 457, 496).

The ALJ discusses the vocational records at various points throughout her decision, noting for example that Braun had "obtained and maintained a semiskilled, highly social job at Staples" with the help of a job coach. (Doc. 6, at 32). The ALJ found the fact that Braun could perform the Staples job with help from a job coach was consistent with her determination that he would be able to perform a less skilled, less social job without a job coach. (Doc. 6, at 32). The ALJ also cited vocational services records reflecting that Braun was more focused and productive on medication, and doing better at work. (Doc. 6, at 25, 577, 580). The ALJ noted that vocational services records indicated Braun did well at jobs such as a laundry worker position at the C'mon Inn and that he often described the job as "easy" and a "good fit." (Doc. 6, at 33, 460, 463-466). And as the ALJ further noted, Braun's supervisor described him as doing well at the job, with Braun actually wanting more hours. (Doc. 6, at 33, 526,).

Overall, the ALJ decision reflects that she considered the vocational services records and weighed them appropriately in assessing Braun's RFC. Braun focuses on specific statements interspersed through the vocational services records, and claims the ALJ erred by not specifically considering or giving more weight to

11

those statements. But an ALJ does not have to address every piece of evidence in the record, and need only explain the rejection of significant, probative evidence. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ adequately considered the vocational services program records, and was not required to specifically address all of the individual notes and records Braun cites to in his brief.

2. <u>Nurse Practitioner</u>

Braun argues the ALJ did not provide sufficient reasons for discounting the opinion of psychiatric nurse practitioner Anne Maxwell. Maxwell saw Braun for the first time in December 2012, and met with him once every few months or so after that for monitoring and medication management. (Doc. 6, 846-60; 880-917; 939-45). In June 2015, Maxwell wrote a letter stating that Braun was "limited in daily activities predominantly due to poor judgment, insight, working memory and impulse control." Maxwell stated it was her opinion that Braun would "never be able to work in a sustained capacity to support himself and deserves permanent disability benefits." (Doc. 6, at 880). In September 2015, Maxwell wrote another letter stating that Braun had difficult controlling his behavior and recommending certain therapeutic services. (Doc. 6, at 931).

Under the regulations in effect at the time of the ALJ's decision, nurse

practitioners like Maxwell were categorized as "other sources" and did not constitute acceptable medical sources.[2] See 20 C.F.R. §404.1513(d)(1); 416.913(d)(1). The Ninth Circuit has held that a nurse practitioner working closely with and under the supervision of a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not. *Taylor v. Comm'r*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)). Here, there is no indication that Maxwell was being closely supervised by a physician or that her findings were endorsed by a physician, which means she does not qualify as an acceptable medical source and the ALJ could reject her opinion for germane reasons.

The ALJ considered Maxwell's letters, but rejected her opinion as to the disabling severity of Braun's impairments because it was not consistent with the medical and other evidence of record. (Doc. 6, at 32). The ALJ found there was "a significant body of evidence" showing that when Braun engaged in treatment and took his medication, he was capable of understanding, staying on task for simple

---

[2] Although the Social Security Administration recently updated its regulations to include nurse practitioners as acceptable medical sources, the court applies the regulations in effect at the time of the ALJ's decision. See *Harris v. Commissioner of Social Security Administration*, 2018 WL 3154471 *2 n. 2 (D. Ariz. June 28, 2018); *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) (under the updated regulations, nurse practitioners are acceptable medical sources for claims filed after March 27, 2017).

duties, and responding appropriately to supervisors." (Doc. 6, at 32). In particular, the ALJ cited treatment notes from October 2014 stating that Braun was doing well after starting a job at Papa Johns and had shown the ability to respond appropriately to supervisors and coworkers. (Doc. 6, at 455). The ALJ pointed to similar notes from March, April, and July 2015 stating that Braun was "more focused" and "more productive" with medication. (Doc. 6, at 446-47, 580). The ALJ observed that, conversely, when Braun did not take his medication he tended to make poor decisions and have more difficulty controlling his emotions and anger. (Doc. 6, at 32). The ALJ permissibly found that Maxwell's opinion as to the severity of Braun's limitations was entitled to limited weight because it was not consistent with the record as whole, which reflected that symptoms were reasonably controlled with counseling and medication. See *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with the medical evidence is a germane reason).

### C. Listed Impairments

Braun argues the ALJ erred by finding that he did not satisfy the criteria for presumptive disability under Listing 12.02 for organic mental disorders or Listing 12.06 for anxiety related disorders.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

    1.    <u>Listing 12.02</u>

Braun maintains he has a cognitive disorder that satisfies the criteria of Listing 12.02, which governs disability based on organic mental disorders. To meet Listing 12.02, a claimant must have an organic mental disorder that satisfies the requirements of paragraphs A and B or paragraph C. Paragraph A requires that a claimant show "a loss of specific cognitive abilities or affective changes" and "medically documented persistence" of at least one of the following: (1) disorientation as to time and place; (2) memory impairment; (3) perceptual or thinking disturbances; (4) change in personality; (5) disturbance in mood; (6) emotional lability; (7) loss of measured intellectual ability. Even if Paragraph A is satisfied, a claimant must also meet the paragraph B criteria, which require that a claimant's mental impairment result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; (4) repeated episodes of decompensation, each of extended duration.

Alternatively, a claimant may satisfy Listing 12.02's C criteria by demonstrating a medically documented history of a mental disorder (at least two years in duration) that has more than minimally limited the claimant's ability to do basic work activities and one of the following (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that

results in decompensation with even a minimal increase in mental demands or change in the environment; or (3) current history of at least one year of inability to function outside a highly supportive living arrangement. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02.

Braun does not argue that he meets the C criteria. Rather, he argues the ALJ erred by finding he did not satisfy the requisite B criteria. With respect to the B criteria, the ALJ first found that Braun had moderate difficulties with activities of daily living based on evidence that he was able to take care of his own hygiene, cook simple meals, tend to the family cat, drive, and perform household chores. The ALJ found that Braun also had moderate difficulties in social functioning because of his history of developmental delays and difficulty getting along with his grandmother. But the ALJ found Braun's social limitations were not marked because the record also reflected that he participated in group functions and activities, such as playing team soccer and hockey, skiing, performing as a disc jockey at parties, socialized with friends, and attended culinary school. The ALJ next found that Braun had only moderate difficulties with concentration, persistence or pace, in light of the fact that he was able to play interactive video games, operate computer software for musical endeavors, attend culinary classes,

17

and operate a motor vehicle. Finally, the ALJ and had experienced no episodes of decompensation of extended duration. (Doc. 6, at 29).

Braun argues the ALJ's findings are not supported by substantial evidence because he needs help with hygiene and self-care, he either has no friends or his friends take advantage of him, and Maxwell's opinion establishes that he has significant memory limitations. (Doc. 11, at 22-23). While the evidence of record certainly shows that Braun's mental impairments caused some functional limitations, substantial evidence supports the ALJ's finding that those impairments do not cause marked restrictions in more than one of the specific functional areas.

    2.    <u>Listing 12.06</u>

Braun next argues the ALJ erred by finding he did not meet or equal the criteria of Listing 12.06 for anxiety related disorders. Listing 12.06 requires that a claimant's anxiety related disorder satisfy certain A and B criteria, or A and C criteria. The B criteria for this listing are the same as those set forth in Listing 12.02, which means they are not satisfied for the reasons discussed above. Alternatively, a claimant may satisfy the C criteria by demonstrating a "complete inability to function independently outside the area of one's home." 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.06. In considering the C criteria, the ALJ cited evidence that Braun worked part time outside the home, drove, disc jockeyed at

parties, and attended culinary classes. (Doc. 6, 29). The ALJ reasonably found there was no evidence that Braun is completely unable to function independently outside of his home as contemplated by the C criteria, and Braun does not argue to the contrary.

The Court thus concludes that the ALJ's step-three analysis is supported by substantial evidence and free of error.

### D. Vocational Expert Testimony

In finding Braun not disabled at step five, the ALJ asked the vocational expert to consider a hypothetical individual who can perform unskilled tasks up to a skilled vocational preparation Level 2; can have occasional interaction with the public but not work directly with the public as part of his work duties; can have occasional interaction with coworkers but cannot work in tandem with coworkers; can tolerate only occasional changes in a routine work setting; should not be required to make more than occasional decisions and judgments; and cannot perform at a fixed production rate or pace but can do goal-oriented work. (Doc. 6, at 95-97). This hypothetical is consistent with the limitations identified by the state agency psychologist (doc. 6, at 813-15) and there are no acceptable medical source opinions to the contrary in the record.

Braun argues the ALJ did not adequately account for all of his limitations in

the residual functional capacity assessment and corresponding hypothetical to the vocational expert. As discussed above, however, the ALJ properly evaluated Braun's subjective testimony and the evidence. Having done so, the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Braun was not disabled at step five.

## IV. Conclusion

For the reasons set forth above, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 15th day of August, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge